SEALED

TIMOTHY COURCHAINE
United States Attorney
District of Arizona
ADRIANA D. GENCO
Arizona State Bar No. 033397
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Adriana.Genco@usdoj.gov
Attorneys for Plaintiff

| FILED ✓ | LODGED ___ |
|---|---|
| RECEIVED ___ | COPY ___ |

APR 2 8 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>1.   Gary Christopher, and<br>2.   Jennifer Christopher,<br><br>                    Defendants. | No.    CR-26-00424-PHX-DWL (MTM)<br><br>**INDICTMENT**<br><br>VIO:    18 U.S.C. § 1956(h)<br>         (Money Laundering Conspiracy)<br>         Count 1<br><br>SD of FL case no.: 26mj8344 WM |

**THE GRAND JURY CHARGES:**

At all times material to this indictment, within the District of Arizona and elsewhere:

**BACKGROUND**

1.      A "phantom hacker scam" ("PHS") is a type of wire fraud scheme wherein an unknown person ("UP"), typically posing as an employee of a technology company or the United States federal government, contacts a victim (often elderly) by phone and falsely claims that the victim's bank account has been hacked or compromised. The purported employee or law enforcement agent informs the victim that the victim must move funds to a third-party or government account to keep the victim's funds safe from the supposed hackers.

2.    In these schemes, the UP often maintains communications with the victim through interstate and/or international voice calls, text messages, and/or messaging applications for weeks, during which the UP instructs the victim to withdraw all of the money from the victim's bank accounts and send the funds to the UP. The UP often gives express directions to the victim to withdraw specific amounts of money and send the funds via one of several methods, including wire transfers, cashier's checks, cash, or gold.

3.    In cases where victims are instructed to give cash and/or gold, the UP arranges with co-conspirators for a "courier" to meet the victim to collect the victim's assets. Couriers generally have a "handler" who provides the address of the victim and the time of the meeting. Couriers also typically receive a security code or passcode that they utter to the victim as a form of identification when they arrive to collect the cash or gold. Couriers are compensated for their role in the conspiracy.

4.    By asking the victim to withdraw the funds or gold from a financial institution and transferring the assets by hand to a courier, the conspirators effectively conceal the assets and thus make the proceeds of the fraud more difficult to trace and ultimately recover. In part, this is because cash and gold are not easily traceable and the victim is not told where the courier is taking the victim's assets or where the assets will ultimately be deposited.

5.    Once the courier obtains the assets from the victim, the courier typically delivers the assets to a co-conspirator designated to receive the assets. The handler provides a "token" to the courier to present as a form of identification. The token is usually an item with a printed number—such as a dollar bill with a serial number. From the number on the token, the person receiving the assets can confirm that the courier is part of the conspiracy and accept the delivery.

///

///

- 2 -

## COUNT 1
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

6. Beginning on an unknown date, but no later than March 10, 2026, and continuing through on or about April 28, 2026, in the District of Arizona and elsewhere, defendants GARY CHRISTOPHER and JENNIFER CHRISTOPHER, did knowingly and intentionally agree, confederate, and conspire with each other and with other persons known and unknown to the Grand Jury, to commit Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud, in violation of Title 18 United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### MANNER AND MEANS

7. The defendants, GARY CHRISTOPHER and JENNIFER CHRISTOPHER, are married and are both residents of the State of Florida. G. CHRISTOPHER served as a courier in a PHS conspiracy in which he picked up and attempted to pick up packages with gold bullion from unsuspecting victims in Arizona and Florida. J. CHRISTOPHER assisted G. CHRISTOPHER by communicating instructions from the handler and making travel arrangements.

8. G. CHRISTOPHER, J. CHRISTOPHER, and other co-conspirators communicated with one another through mobile application messaging services to coordinate their activities and work together to launder funds obtained through PHS schemes targeting multiple victims. The communications shared through the messaging

- 3 -

service included the victim's name, age, physical description, address, and the passcode G. CHRISTOPHER needed to provide the victim.

9. G. CHRISTOPHER traveled to locations in the United States to collect assets, including gold, from the victims. After receiving the assets, G. CHRISTOPHER was instructed to drive away without providing the victims with any information about where he would be taking the assets. Once hidden from sight from the victims, G. CHRISTOPHER was instructed to report the contents of the gold packages to his co-conspirators using interstate wire communications. G. CHRISTOPHER then delivered the gold to other co-conspirators. By doing so, G. CHRISTOPHER, J. CHRISTOPHER, and other co-conspirators attempted to conceal, and did conceal, the source of the funds obtained illegally through the PHS wire fraud scheme.

10. In furtherance of the above conspiracy, and to accomplish its objects and conceal the existence thereof, G. CHRISTOPHER, J. CHRISTOPHER, and others performed acts in the District of Arizona, and elsewhere, including, but not limited to, the following:

    a. In or about March and April 2026, G. CHRISTOPHER, J. CHRISTOPHER, and other unknown co-conspirators exchanged text messages and participated in phone calls in which they discussed picking up and transferring assets from victims located across the United States;

    b. In or about March 2026, an unknown co-conspirator defrauded victim J.H., a resident of Arizona, by convincing J.H. through interstate communications that J.H.'s bank deposits were at risk due to hackers and that J.H. needed to transfer J.H.'s assets to the co-conspirator for safekeeping. As part of this fraud scheme, the co-conspirator successfully convinced J.H. in or about March 2026 to transfer assets in the form of gold bullion, valued at approximately $390,500, to an unknown co-conspirator courier, which were proceeds of the wire fraud perpetrated against J.H.;

c. In or about April 2026, as part of the ongoing wire fraud scheme perpetrated against J.H., an unknown co-conspirator convinced J.H. to engage in another financial transaction by transferring funds from J.H.'s IRA account to her checking account in preparation for purchasing additional gold bullion, which was to be collected by G. CHRISTOPHER;

d. On or about April 6, 2026, J. CHRITOPHER sent G. CHRISTOPHER a video that appeared to demonstrate how to package and ship gold through an interstate shipment company;

e. On or about April 8, 2026, J. CHRISTOPHER assisted with the reservation and purchase of plane tickets from Chicago, Illinois, to Phoenix, Arizona, for G. CHRISTOPHER so that G. CHRISTOPHER could retrieve the gold bullion from J.H.;

f. On or about April 9, 2026, G. CHRISTOPHER traveled from Chicago, Illinois, to Phoenix, Arizona, to pick up assets from J.H.;

g. On or about April 9, 2026, G. CHRISTOPHER sent a text message to an unknown co-conspirator confirming that G. CHRISTOPHER was en route to J.H.'s residence and the co-conspirator responded by providing G. CHRISTOPHER with a physical description of J.H. so that G. CHRISTOPHER could identify J.H. and obtain the gold bullion from J.H.; and

///

///

///

- 5 -

h.  On or about April 9, 2026, G. CHRISTOPHER attempted to pick up approximately $600,000 worth of gold bullion, which would have been wire fraud proceeds, from J.H. at J.H.'s residence in Phoenix, Arizona.

All in violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date: April 28, 2026

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

s/
ADRIANA D. GENCO
Assistant U.S. Attorney

- 6 -

SEALED

> ☑ FILED ___ LODGED
> ___ RECEIVED ___ COPY
>
> APR 2 8 2026
>
> CLERK U S DISTRICT COURT
> DISTRICT OF ARIZONA
> BY_____ DEPUT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>1. Gary Christopher, and<br>2. Jennifer Christopher,<br><br>Defendants. | No.   CR-26-00424-PHX-DWL (MTM)<br><br>**ORDER TO SEAL INDICTMENT**<br><br>**(Filed Under Seal)** |

Based upon the United States of America's Motion to Seal pursuant to Fed.R.Crim.P. 6(e)(4), and good cause appearing;

**IT IS ORDERED** that the Indictment filed in this matter, the Motion to Seal and this order be filed under seal, to be unsealed upon the arrest of the defendant.

DATED this April 28, 2026.

HONORABLE DEBORAH M. FINE
United States Magistrate Judge

CC: None